William A. Waters, and others, Lessors. *vs.*
Washington Waters and Ellen M. Waters,
his Wife, Tenants in Possession.

*Ejectment—Order of examination of Witnesses where
Defendant claims under a Will—Evidence—Attor-
ney's Notes of Testimony at former trial inadmissi-
ble—When Opinions as to Mental capacity admis-
sible—Inadmissible Evidence as to Mental capacity
—Letters addressed to Testator when inadmissible
as Evidence of mental capacity—Notice prescribed
by rule of Court under Code, Art. 37, section 18—
Recalling and Contradicting Witnesses—What con-
stitutes a Waiver of objections to a defective Notice
of the Time and Place of taking depositions —
Appeal.*

Where the defendant in *ejectment* claims under a will, the *onus* of proving
the proper execution of the will is on him; and, for this purpose, he
must call the subscribing witnesses and make them his own; but the
Court may at the time of the proof of the execution of the will confine
the cross-examination of the subscribing witnesses to the testamentary
capacity of the testator *at the time* of such execution, leaving the plain-
tiff the right of afterwards cross-examining the witness as to all matters
pertinent to the testator's mental capacity.

A witness having stated that a testator had not such knowledge of his
property and relations as to make a proper and intelligent distribution
of his property, it is competent on cross-examination to question him as
to his opinion of the propriety and intelligence of the several disposi-
tions of the will; and the proper course to pursue in eliciting this opinion
is not to hand him the will to construe, but to read to him the several
dispositions, and question him in relation to them.

The notes of an attorney, taken in a former cause between the same par-
ties, of the testimony of a witness since deceased, are inadmissible as
evidence *per se;* but the attorney may testify as to the evidence of the
deceased witness, and will be allowed to use his notes as memoranda to
refresh his memory.

The answer of a witness that a wife treated her husband "as a parent would a child," is inadmissible to prove the insanity of the husband, being ambiguous and a mere expression of the witness' opinion.

The opinion of a witness, who is neither a subscribing witness nor a medical expert, as to the mental capacity of a testator, is inadmissible unless accompanied with a statement of the facts and circumstances upon which it was founded; and these facts and the witness' opportunity to judge, should be shown to be such as to furnish a rational ground for an opinion.

Where the question is as to the mental capacity of a testator, it is not allowable to ask the draftsman of the will "whether he was ever warned, and by whom, and when, to the effect that the testator was not capable of making a will or managing his affairs?"

Letters addressed to a person are inadmissible as evidence of his mental capacity, unless it be shown that they came to him and that he exercised some act of judgment or understanding upon them.

Letters found among the papers of a deceased person written in reply to verbal messages received from him, are inadmissible as evidence of his mental capacity.

The rule of Court contemplated by Article 37, section 18, of the Code, should prescribe the notice to be given; but it is a sufficient compliance with the section, where the rule of Court provided that the commissioners should give "such notice as they may deem reasonable," and it appeared that the notice actually given was reasonable.

Where a party appears by counsel before a commissioner to take testimony and cross-examines witnesses, he waives all objection to any defect in the notice given of the time and place of taking the depositions.

No appeal can be taken from a refusal of the Court to permit a witness to be re-called after his examination is completed; it being a matter in the discretion of the Court.

Where it is proposed to contradict a witness by evidence of previous conversations at variance with his testimony, a proper foundation must be laid by interrogating the witness as to his specific statements in those conversations.

APPEAL from the Circuit Court for Montgomery County.

*Plaintiffs' First Exception:* The plaintiffs after proving the seisin and possession of Tilghman Waters of the lands mentioned in the declaration, and his death in 1864, and that

they and the defendant, Washington Waters, were his heirs-at-law, rested their case. Thereupon the defendants produced a paper purporting to be the last will and testament of Tilghman Waters, and declared that they meant to prove the execution of said last will by testimony of the subscribing witnesses. After examining Leonidas Willson, one of the subscribing witnesses, as to the fact of its execution, they then examined R. H. Burdett, another subscribing witness thereto, who testified to the due execution of the will. And thereupon, the defendants' counsel asked the witness Burdett, to state whether Tilghman Waters, at the time of executing said will, was or not of sound and disposing mind, memory and understanding? Witness thereupon testified. And the said Willson had also testified in his examination-in-chief, that the said Tilghman Waters, was of sound and disposing mind, memory and understanding, at the execution of said will.

Thereupon the plaintiffs' counsel proposed to cross-examine the witness Burdett, touching the acts and declarations of Tilghman Waters, prior to the execution of said alleged will for the purpose of showing, that prior to the execution of said will, the said Tilghman Waters was of unsound mind; that such unsoundness was known to the witness, and continued, to his knowledge, at the execution of said will. But the Court, on the objection of defendants' counsel, refused to allow said proposed cross-examination for the purpose aforesaid; and thereupon the plaintiffs excepted.

*Plaintiffs' Twelfth Exception:* A witness having testified that he was overseer for the testator, stated that in his opinion the testator was of sound mind and capable of executing a will; and the plaintiffs' counsel having asked the said Hall, on cross-examination, whether he had not, in April or March, 1864, shortly after the death of the testator, gone to the house of Zadok Waters, in this county, and stated to him that he never knew the testator to transact any business, and that on one occasion the testator wanted him, the witness, to break up a fine piece of meadow-land, with a good crop of grass on

it, in the time of wheat-harvest, and to plant the same in corn; and the said Hall having denied that he had ever so stated, and having been also asked, on cross-examination, whether he had not, shortly after the death of said testator and after the present plaintiffs had filed a caveat to the will now in evidence, declared to one Horace Waters, at the mill of the testator, that the plaintiffs were all a damned set of rogues; and the witness having denied that he had so stated, and the plaintiffs having closed their cross-examination, the witness then left the stand; and the defendants, after examining one other witness, announced that their case was closed; and thereupon the Court adjourned, and upon reässembling of the Court on the following morning, the plaintiffs' counsel, before offering their rebutting evidence, stated that they desired to recall the witness Hall, and inquire of him whether, at the time and place first above stated herein, he had not expressed the opinion to said Zadok Waters that the testator was not capable of executing a valid will, and also proposed to ask said witness whether he had not said to said Horace Waters, on the occasion above referred to, that the plaintiffs were all a damned set of thieves, the said counsel declaring that they meant to offer proof, now in Court, to prove that said Hall had made the statements so offered to be enquired about, and thereby to discredit the said Hall; and the said counsel stated at the same time, that in their cross-examination of said Hall, before the defence was closed, they were not aware of the precise language which said Hall had so used on these several occasions, and now desired to give said Hall an opportunity to admit, deny or explain the reputed language, before the same should be proved; but the Court, on the objection of the defendants, refused to allow said questions, or either of them, to be propounded to said Hall; and thereupon the plaintiffs excepted.

*Plaintiffs' Thirteenth Exception:* After the signing of the last exception, the plaintiffs examined Mrs. Mary Waters, wife of Zadok Waters, who testified that she was present about

two weeks after the death of the testator, at the house of her husband, when John Hall, the witness mentioned in the twelfth exception, came there and stated to her husband that the testator had never done any business while he was there, and that on one occasion the said Tilghman wanted him to break up a fine piece of meadow-land, with a good crop of grass on it, in the time of wheat-harvest, and to plant the same in corn; and the plaintiffs then proposed to ask the witness what the said Hall said at the same time and place, and as part of the same conversation, touching the capacity of the testator to make a will; but the Court refused to allow said question to be propounded, because the question put to said Hall, as stated in the twelfth exception, did not lay a sufficient foundation as to capacity; and thereupon the plaintiffs excepted.

*Plaintiffs' Fourteenth Exception:* The plaintiffs offered ten prayers, all of which were granted, except the second and tenth, which were as follows:

2nd. If a person be not of sane memory, he cannot make a will, or dispose of his land. To conclude a man to be of sane memory, he ought to be able to distinguish of things with good understanding, to have a judgment to discern, and in a word, to be of perfect memory; otherwise his will is void. To be of sound and perfect memory, is to have a reasonable memory and understanding to dispose of an estate with reason.

10th. That a will or testament may, by its provisions, furnish intrinsic evidence involving it in suspicion, and tending to show the incapacity of the testator to make a disposition of his estate with judgment and understanding in reference to the amount and situation of his property, and the relative claims of the different persons who should have been the objects of his bounty.

The defendants offered four prayers, the first, second and third of which were conceded, and the fourth as follows, was granted by the Court:

4th. If from the whole evidence, the jury shall find that Tilghman Waters executed the will in controversy, in the presence of three subscribing witnesses thereto, and that they, at his request, in his presence, and in the presence of each other, signed their names as witnesses thereto; that at the time of the execution thereof, he, the said Tilghman, was capable of understanding the business in which he was engaged—the property he desired to dispose of, and the object of his bounty named in said will, and that the same was his free and voluntary act, they will find for the defendants.

The plaintiffs excepted to the rejection of their second and tenth prayers, and to the granting of the fourth prayer of the defendants. The verdict and judgment were for the defendants, and the plaintiffs appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON and ALVEY, J.

*Robert J. Brent* and *George Peter,* for the appellants.

*Thomas Donaldson* and *Joseph H. Bradley, Sr.,* for the appellees.

BARTOL, C. J., delivered the opinion of the Court.

This was an action of ejectment by the heirs at law of the late Tilghman Waters, against the devisees in his will. The controversy turned entirely upon the question of the validity of the will; the plaintiffs contending that the deceased was of unsound mind, not capable of making a valid will, at the time the will was executed, and that the execution of the will was induced by undue influence of fraud and circumvention.

Thirteen bills of exceptions were taken by the plaintiffs at the trial; twelve of which were to the rulings of the Circuit Court upon questions of evidence; and the thirteenth, (which is numbered fourteenth in the record,) to the rulings upon the prayers.

These will be considered in their order; most of them involve simple and familiar principles and may be briefly disposed of.

*First Exception:* The question raised by this exception has been rendered immaterial; it appearing from the *thirteenth* bill of exceptions, that in a subsequent stage of the trial, the plaintiffs had the benefit of fully cross-examining the witness Burdett; and therefore suffered no injury by the refusal of the Court, to allow the cross-examination to be made at the time when it was first attempted.

But as the question is presented by the record and has been argued ; and as it is a question of practice of some interest, we have considered it, and are of opinion that there was no error committed in this respect, by the Circuit Court ; but that the course pursued in allowing the subscribing witnesses to the will to be first examined in chief as to the mental capacity of the testator at the time the will was executed, and to confine the cross-examination of such witnesses, at that stage of the cause, within the same limits, was according to the usual practice. The *onus* was upon the defendants to prove the due execution of the will, and for that purpose it was necessary for them first to call the subscribing witnesses, to testify as to the fact of the execution of the paper, and the mental capacity of the testator at that time ; thus making them their witnesses. Leaving to the plaintiffs the benefit of fully cross-examining the witnesses afterwards, touching all matters pertinent to the question of mental capacity. This privilege was afterwards exercised in this case by the appellants.

*Second Exception:* Zadok Waters, a witness for the plaintiffs, having stated in his testimony " that Tilghman Waters had not such a knowledge of his property and relations, as to make a proper and intelligent distribution of his property," thereupon the defendants propounded to the witness the following question : " Now look at this will (handing him the will of Tilghman Waters) and say whether you think the distribution of the property by this will is intelligent and proper ?"

The plaintiffs objected; the Court overruled the objection and permitted the question to be asked. It was quite admissible to ask the witness, on cross-examination, whether the particular dispositions of the property actually made by the will in question, were in the opinion of the witness, intelligent and proper. Such a question was pertinent, both for the purpose of ascertaining the meaning of the witness' testimony in chief, and for testing his capacity to form a correct judgment with regard to what would be an intelligent and proper disposition by the testator, of his property.

The will had been produced in evidence, and its contents were properly to be considered by the jury, in connection with the witness' testimony, in order that they might judge of the weight to be given to the latter.

At the same time we are of opinion that the course pursued in the cross-examination of the witness, is not entirely free from objection; and while we do not consider it as furnishing sufficient legal ground for reversing the judgment; yet as a matter of practice, we are unwilling to give it our entire sanction.

Instead of putting the will in the hands of the witness, and propounding the question to him in the form proposed, the more regular course was for the counsel to call his attention to the particular dispositions of the property made by the will, and to ask him the question with respect to them severally, instead of leaving the witness to read over, or spell out for himself the whole will, and to construe its provisions, in order to enable him to answer the question. Such a course of examination might greatly delay the progress of the trial, and lead to fruitless discussions between the counsel and the witness with respect to the construction and effect of the provisions of the will; and therefore we think the particular mode of examination here pursued, ought not to be encouraged.

*Third Exception:* This bill of exceptions raises the question whether the testimony of a deceased witness, given in a former cause between the same parties, can be proved by reading

to the jury the notes of such testimony as taken down by one of the plaintiff's attorneys at the former trial. The Circuit Court refused to permit the notes to be read as evidence; but "allowed the attorney, who was sworn as a witness, to refresh his memory by looking at the notes, and then to state what recollection he had of the testimony given by the deceased witness after he had read the notes." In our opinion there was no error in this ruling, this mode of proving the testimony which had been given by the deceased witness was in accordance with the rules and practice in such cases, and was followed in *Bowie vs. O'Neale,* 5 *H. & J.,* 226, and *Garrott vs. Johnson,* 11 *G. & J.,* 173. In those cases the testimony of the deceased witness was deposed to by a witness who had been present at the former trial; the question, however, did not arise as to the admissibility of notes of the testimony, as evidence *per se.* Some diversity has existed in the decisions in England and this country upon the question whether the Judge's notes can be admitted to prove the testimony which had been given by a witness on a former trial, who has since died; but we have found no case in which the notes of testimony, taken by an attorney engaged in the trial, have been held to be admissible as evidence *per se,* and there seems to us to be very grave and serious objections to their being admitted.

It is no part of the counsel's duty to take down the whole testimony of a witness, and in most cases it would be impracticable for him to do so; generally he does no more than note down those parts of the testimony which appear to him to be material, or most worthy to be noted, or tending to support his own side of the case; and to admit the notes thus taken to be read in evidence, as proof of the testimony which had been given, would be a very unsafe practice; and we do not find it sanctioned by any decided case. It is supposed some authority in support of the appellants' position is found in the language of MANSFIELD, C. J., in *Mayor of Doncaster vs. Day,* 3 *Taun.,* 262.

In that case application being made for a new trial, the Court directed that the cause should abide the event of the verdict in another of the causes involving the same questions, which was in progress for trial; whereupon the plaintiff's counsel, apprehending that some of his witnesses, who were very aged; might die moved for a rule that their evidences given on the former occasion might be read at the next trial. MANSFIELD, C. J., said: "You do not want a rule of Court for that purpose; what a witness, since dead, has sworn upon a trial between the same parties may, without any order of the Court, be given in evidence, either from the Judge's notes, or from notes that have been taken by any other person, who will swear to their accuracy; or the former evidence may be proved by any person who will swear from his memory to its having been given," and "HEATH, J., concurred in refusing the application."

The point here decided was that an order of Court was not necessary to enable a party to prove the testimony given by a witness since deceased; it cannot be understood as deciding that the notes of the testimony taken by a Judge or counsel are *per se* evidence. Such notes are mere memoranda, which may be used to refresh the memory of the witness who took them; but are not of themselves evidence, as was decided by TALFOURD, J., in *Reg. vs. Child*, 5 *Cox Cr. Cases*, 203; by GURNEY, B., in *Reg. vs. Plummer*, 8 *Jurist.*, (*p.* 1,) 922, and in *Lightner vs. Wike*, 4 *S. & R.*, 203; *Miles vs. O'Hara*, 4 *Binney*, 108; *U. States vs. Wood*, 3 *Washington C. C. R.*, 440. Upon this question we fully concur in the reasoning of C. J. TILGHMAN, in *Lightner vs. Wike, above cited;* which we think directly applicable to the present case; both in respect to the general rule by which the notes of counsel are held inadmissible as evidence *per se;* and as applied to the notes themselves which were offered in this case; and which we think furnish intrinsic proof in support of the reasoning upon which the rule is based; for they are evidently incomplete statements of the evidence; they contain none of the witnesses' answers on

cross-examination; although the testimony showed that a cross-examination had taken place. In any view of the question, we think the notes of the counsel were properly excluded as evidence *per se.*

*Fourth Exception:* The answer of the witness, Zachariah Waters, that Mrs. Waters treated her husband, the deceased Tilghman Waters, "*as a parent would a child,*" was properly ruled out as inadmissible testimony to prove the insanity of the deceased; both because it was a mere expression of the witness' opinion, and because it was in itself ambiguous and conveys no distinct or definite idea of the witness' meaning, as suggested by the appellees' counsel, "a parent treats a child kindly and affectionately; and so a wife ought to treat her husband; and such might be the witness' meaning; and yet the jury might suppose the meaning to be that she treated her husband as a parent treats a child too young to have any discretion and judgment of its own."

*Fifth Exception:* We concur with the Court below in its ruling as stated in the fifth bill of exceptions. The conversation testified to by the witness McPherson, it is evident could not furnish any sufficient basis for an opinion in regard to Mr. Waters' mental capacity. The witness not being one of the subscribing witnesses to the will, nor a medical expert; his opinion with regard to the mental capacity of the testator was not admissible, unless accompanied with a statement of the facts and circumstances upon which it was founded. This rule is well settled in Maryland by a number of decisions, of which we may refer to *Brooke vs. Townsend,* 7 *Gill,* 10 ; *Dorsey vs Warfield,* 7 *Md.,* 65 ; *Weems vs. Weems,* 19 *Md.,* 334. It must appear that the witness had an opportunity of forming a rational opinion ; for as was said by WASHINGTON, J., in *Harrison vs. Rowan,* 3 *Wash. C. C.,* 586, " the mere opinions of the witnesses are entitled to little or no regard, unless they are supported by good reasons, founded on facts which warrant them in the opinion of the jury. If the reasons are frivolous or inconclusive, the opin-

ions of the witnesses are worth nothing." This observation of the learned Judge was made with reference to the opinions of the subscribing witnesses to the will, and the weight to be given to them when tested by cross-examination; and is applicable with more force to the question now under consideration, where the opinion of the witness is not competent evidence, unless sufficiently fortified by facts and circumstances. It seems to us that in some instances the rule which governs the admissibility of testimony of this kind has been lost sight of, or too greatly relaxed, and that such evidence has been sometimes received without any sufficient basis. It may be difficult to lay down any precise rule defining the basis on which such testimony ought to rest; but some reasonable limits ought to be assigned; so that the mere naked opinions of the witness, unsupported by facts, shall not be admitted. As we have said, it ought to appear that the witness had an opportunity of forming a rational opinion, and the facts deposed to by him ought to be such as in some manner to indicate the mental capacity of the testator, and to furnish to the witness rational ground for an opinion upon that subject. In our judgment, the brief and casual conversation with the testator deposed to by the witness McPherson, on the only occasion upon which they appear to have met; furnished no sufficient ground to justify any opinion of the witness with regard to his mental capacity or competency to make a valid will.

*Sixth Exception:* The evidence stated in this bill of exceptions was altogether irrelevant to the issue; and no argument is required to show that it was properly excluded.

*Eighth Exception:* This bill of exceptions (which, as appellees' counsel says, ought to be numbered the seventh,) was taken to the action of the Circuit Court, in ruling out the question proposed to be asked by plaintiffs' counsel of Mr. Wm. J. Ross, the draftsman of the will, "whether he was ever warned, and by whom, and when, to the effect that Tilghman Waters was not capable of making a will or managing his affairs? or words to that effect." In our opinion,

there was no error in ruling out the question; to have allowed it to be answered could have had no other effect than "to introduce unsworn hearsay testimony in regard to the soundness or unsoundness of the testator's mind."

The ninth bill of exceptions has been abandoned by the appellants.

*Tenth Exception:* This bill of exceptions presents a question of some interest and nicety. The witness, *Chiswell*, having testified that he was acquainted with the testator since the year 1847; and rented a farm from him in Frederick county, the defendants then offered in evidence two letters addressed by Chiswell to the testator, one dated January 20th, 1858, and one February 1st, 1858. It was proved that the letters were found among the papers of the deceased testator. Objection was made to the reading of the letters in evidence; and the objection being overruled, this bill of exceptions was taken.

The objection stated by the plaintiffs below and urged here, is, that the letters were inadmissible, unless they were "connected by proof with some act of the testator in regard to the letters themselves or their contents." On the other hand, it has been contended by the appellees, that the letters were admissible, as "showing the manner in which the testator was treated, in regard to matters of business, at the time when they were written, by one well acquainted with him, and for a long time his tenant, and were confirmatory of the testimony given by the writer of them, in regard to the sanity of the testator, and his competency to transact business."

Where the question in controversy, like that in the present case, involves an inquiry into the mental capacity of the testator, not merely at the time of making the will; but at all previous times—his entire natural incapacity being alleged—the door is opened for the fullest investigation of all the transactions of his life; for all these, even the most trivial, may assist the jury in forming their judgment of his mental capacity. At the same time, it is quite clear that the acts

and sayings of third persons with reference to him, even though they might be construed into an expression on their part of an opinion or belief touching his mental capacity, cannot be admitted in evidence; unless connected with some act on his part which indicates his competency or incompetency.

Now letters of third persons addressed to a party, are not of themselves any evidence of the mental capacity of the party to whom they are addressed; and are not admissible for that purpose, unless it be shown that they came to him, and that he exercised some act of judgment or understanding upon them; and then they are admissible merely as inducement, or as connected with the acts of the party, whose competency or mental capacity is in dispute, and which the letters may serve to elucidate or explain. It is what he has done or said upon the occasion, and not what has been done or said by others, that is pertinent to the question in issue. Upon this ground alone could the letters of *Chiswell* addressed to the testator be admissible evidence.

For it is quite clear both upon principle and authority, that they were not admissible, either for the purpose of proving the opinion of the writer at the time they were written, that the testator was sane and competent to transact business ; for as such, they were no more than the mere declarations of the writer without oath ; nor were they admissible for the purpose of confirming the testimony of *Chiswell,* upon that question.

We have examined with much care the case of *Wright vs. Doe, dem. Tatham,* 7 *Ad. & El.,* 313–408, in which this question was discussed with great ability, first in the King's Bench and afterwards in the Exchequer Chamber; and the same case on appeal in the House of Lords, reported in 5 *Cl. & Fin.,* 670–775.

In that case the learned judges differed in opinion, as to the admissibility of the letters there offered in evidence. But all were of opinion that they were inadmissible, unless connected by evidence with some act of the testator done with reference to them ; and which the contents of the letters were admissible

to explain. We yield our unqualified assent to the rule of evidence established in that case; and in order to decide the question presented by this bill of exceptions have only to inquire whether (to use the language of PARKE, B., in the case cited) "there is any evidence of an act done by the testator, with reference to these letters, or either of them, to render their contents admissible by way of explaining that act."

The only proof in the bill of exceptions, is that the letters were found among the papers of the deceased. It is not shown by whom they were placed there, or that they ever came to the testator or were read by him; but if that could be inferred from the fact that they were found among his papers; still that would not be sufficient, unless it were shown that he had acted upon them in some way; but of this there is no proof. The witness Chiswell stated that the letters were written in reply to verbal messages received from Tilghman Waters; and it was argued by the counsel for the appellees that this statement connected the letters with the act of the testator and rendered them admissible. To this position we cannot yield our assent; the statement of the witness amounts to no more than that the verbal messages, of which he speaks, purported to come from Tilghman Waters; as to the fact whether they had been sent by the testator himself or by some one in his name, it was impossible of course for the witness to say of his own knowledge. Taking the fact, however, to be as stated by the witness, it is impossible to see upon what principle this can render the letters admissible. The messages or declarations of Tilghman Waters, so far as they were actually known to the witness, and all his acts, connected with the transaction of business, it was competent for the witness to state in his testimony; but his letters addressed to Tilghman Waters were not admissible, unless they were connected by proof with some act of Mr. Waters, done with reference to the letters themselves and which they might tend to explain.

Believing that the Circuit Court erred in admitting the letters of Chiswell, its ruling in this bill of exceptions must be reversed.

*Eleventh Exception:* We see no good objection to the admissibility of the deposition of Thomas Griffith. It was taken under the 71st rule of the Court, which is set out at length in the bill of exceptions, and which purports to have been passed in conformity with the Code, Art. 37, sec. 18.

The argument of the appellants is that the Code, by its terms, contemplates that the notice to be given before taking such testimony, shall be prescribed by the rule of Court, and the objection here urged is that the 71st rule, instead of prescribing what notice shall be given, provides that the commissioners shall give "*such notice as they may deem reasonable.*"

We agree with the appellants that the safer and better practice would be, for the notice required, to be prescribed by the rule of Court; but that is not essential to the validity of the rule. And when, as in this case, the notice actually given appears to have been reasonable; and the rule of Court has been complied with, no objection exists to the admissibility of the testimony. But even if such objection existed, the act of the appellants in appearing by counsel and cross-examining the witness, would be a waiver of the objection, and would heal any defect in the notice; as was decided in *Williams vs. Banks,* 5 *Md.,* 199; *Cherry vs. Baker,* 17 *Md.,* 75; *Matthews, et al., vs. Dare & McClure,* 20 *Md.,* 248.

*Twelfth Exception:* The question presented by this bill of exceptions is one which rested exclusively in the discretion of the Circuit Court; and is not a matter subject to review on appeal, as was decided in *Schwartze vs. Yearly,* 31 *Md.,* 276, and *Green vs. Ford, ante,* 82.

*Thirteenth Exception:* The ruling of the Circuit Court contained in this bill of exceptions is free from objection. The evidence offered for the purpose of contradicting the witness, Hall, was properly excluded; there being no sufficient foundation laid for it in the previous examination of Hall.

*Fourteenth Exception:* This bill of exceptions presents for review the action of the Court below upon the prayers. Of these the plaintiffs offered ten, all of which were granted except the *second* and *tenth;* and the defendant four, of which all were conceded, except the *fourth,* which was granted by the Court. Exception was taken to the refusal of the *second* and *tenth* prayers of the plaintiffs, and the granting of the defendants' fourth prayer. We think there was no error in refusing the plaintiffs' second prayer. Its language is taken from a quaint but most learned and excellent work on wills; and when taken in connexion with the context, is very intelligible to professional readers, but presented in the form of an instruction, its terms were such as tended to confuse and mislead the jury, rather than to enlighten them, with regard to the degree of mental capacity required to make a valid will.

But even if free from objection on this ground, its refusal would not be cause for reversal; inasmuch as it appears that upon that question in the case, the instructions actually given to the jury were full, explicit and free from objection.

The tenth prayer of the plaintiffs stated an abstract proposition correct in itself, but it was properly refused, because the will of Tilghman Waters, which was in contest, whether considered in itself or in connexion with the testimony in the cause, furnished no intrinsic evidence of want of capacity in the testator. It would therefore have been error in the Court below to have granted the plaintiffs' tenth prayer. In our judgment, the fourth prayer of the defendants states correctly all the essential requisites to constitute a valid testamentary act.

The only objection to it made by the appellants in the argument was, that it tended to " mislead the jury to ignore all the evidence of fraud and undue influence." But this objection is not well founded; for the prayer submits to the jury to find whether the execution of the will was the *free* and *voluntary* act of the testator. It appears to us, from an examination of the several prayers, that the law of the case

was fully and correctly given to the jury for their direction. We affirm the rulings of the Circuit Court upon all the exceptions except the *tenth,* but being of opinion that there was error in admitting the evidence stated in the tenth bill of exceptions, the judgment will be reversed and a new trial ordered.

*Judgment reversed and*
*new trial ordered.*

(Decided 3d May, 1872.)