# CHRISTOPHER SMITH

## *vs.*

## GEORGE SHUPPNER, SR., Executor.

*Attorneys: duty of—. Prayers: copied from other decided cases. Testamentary capacity: exclusion of near relatives; intrinsic evidence of will; presumption of capacity. Witnesses: experts; opinions, foundation for—; attending physician. Evidence: once admitted; deductions from.*

An attorney employed to assist in the settlement of an estate is presumably interested in keeping the estate from being the object of attack, and the fact that such an attorney calls the attention of a prospective litigant to the effect of litigation instituted by him adds nothing, in the way of discrediting that attorney, to his admission that he was so employed.        p. 415

The fact that an instruction was taken from the language used in an opinion of the Court of Appeals in a former case, does not necessarily make the instruction correct in another case.                                            p. 415

The fact that a testator disposes of his estate to the exclusion of near and dear relatives, without any known or apparent cause, while constituting a suspicious circumstance as to his capacity to make a proper disposition, does not *per se* furnish sufficient ground to set aside the will.            p. 416

The intrinsic evidence furnished by the will itself is always an element to be considered by a jury in determining the sanity of a testator.                                                           p. 416

The presumption of law is that a testator was of sound mind at the time of the execution of his will, and the burden of proof is upon the caveator to prove the contrary.                    p. 417

A person defending a will is entitled to rely upon the presumption that a testator's reasons for excluding near relatives were valid and sane reasons.                                    p. 417

In proceedings to determine a testator's testamentary capacity, it is the duty of the court, before permitting a witness, other than an attesting witness, or an attending physician testifying as an expert, to express an opinion as to the mental capacity of the testator, to require a statement of the facts and circumstances upon which such opinion was based.        p. 417

In questions of mental capacity, a foundation must be laid for an opinion, and non-experts can not be permitted to give it, without giving the facts and circumstances upon which the opinion was based.                                              p. 417

When evidence is once admitted, it is in the case to be considered, and the jury have the right to consider every fact that is proven to their satisfaction.                              p. 419

A prayer is correct that does no more than direct the jury's attention to the fact that what they are to determine is the condition of the testator's mind at the time of the execution of the will, and that if they are satisfied from the evidence that he was then capable of making a valid will, the fact that they may believe him to have become incompetent at a later period should have no effect.                                            p. 419

*Decided February 10th, 1915.*

Appeal from the Court of Common Pleas of Baltimore City.  (Dobler, J.)

The facts are stated in the opinion of the Court.

Md.]                    Prayers.

The following are the prayers of the caveatee, that the Court directed to be printed in the report of the case :·

*Deft.'s 7th Prayer*—The defendant prays the Court to instruct the jury that it is not sufficient to avoid a will to show merely that a testatrix has left her estate to certain of her relatives and to strangers to her blood, to the exclusion of other of her relatives, without any apparently valid reason for so doing, as the testatrix may have had, what seemed to her at least, sufficient reasons which are not disclosed by the testimony. (*Granted.*)

*Deft.'s 9th Prayer*—That in passing upon the mental capacity of the testatrix, the jury should bear in mind that the mere opinions of witnesses are entitled to weight only to the extent that they are supported by good reasons founded on facts which warrant them in the opinion of the jury. If the reasons are frivolous or inconclusive, the opinions of such witnesses are of no value. (*Granted.*)

*Deft.'s 10 Prayer*—The Court instructs the jury that if they find from the evidence that the previously expressed intention of Regina Barbara Stoll as to the testamentary disposition of her property was different from that as expressed in the will in question, then this fact of itself will not be sufficient to overthrow said will, if the jury find from the evidence that Regina Barbara Stoll at the time of executing said will, had sufficient mental capacity to make a valid deed or contract. (*Granted.*) .

*Deft.'s 11th Prayer*—The jury are instructed that if they find that on the date 'of the execution of the will of Regina Barbara Stoll, namely, on the 20th of March, 1910, the testatrix was of sound and disposing mind and capable of making a valid deed or contract, then they should disregard any evidence of impairment of her mental faculties after that time, if they find such. (*Granted.*)

The cause was argued before Boyd, C. J., Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*George A. Solter* (with whom were *Wm. S. Bansemer* and *Adolph Schoneis* on the brief), for the appellant.

*Karl A. M. Scholtz* and *Robert F. Stanton,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

This appeal involves the correctness of the rulings of the lower Court upon the trial of issues framed by the Orphans' Court of Baltimore City and sent to a law Court for determination, upon a caveat filed to the probate of the last will and testament of Regina Barbara Stoll. The issues were four in number: (1) Execution of the will; (2) testamentary capacity of the testatrix; (3) undue influence exercised upon the testatrix; (4) fraud practiced upon her. At the close of the caveator's testimony prayers were offered by the caveatee asking the Court to instruct the jury to find for the caveatee on each issue. The Court instructed the jury, as a matter of law, to find for the caveatee on the first, third and fourth issues, but refused to so instruct as to the second issue— testamentary capacity. The prayers granted were conceded by the caveator, so no question arises in this appeal from the ruling thereon. At the close of all the testimony, this rejected instruction was again asked and again refused; and the case being submitted to the jury on this one issue of testamentary capacity, the finding was in favor of the caveatee.

All of the prayers offered by the caveator were granted by the Court, so the exception to the prayers refer only to those granted on behalf of the caveatee. Of the eight exceptions to the testimony, the first and second have been abandoned, and we will consider the remaining in their numerical order. But first, we will give a synopsis of the facts, so far as we deem necessary, in order to determine the different questions here presented.

The testatrix, at the time of her death, was the widow of John Stoll, who had predeceased her by about a month. They were an old German couple and had been engaged in the butchering and market business for many years in Baltimore City. They were childless, and left as their next of kin, nephews and nieces of each. The will in question was executed on the 20th day of March, 1910, when the testatrix was about eighty-two years of age. She died on the 19th day of August, 1913. John Stoll, the husband, who was a few years older, executed his will on the same day as his wife, and died on the 17th of July, 1913. Both had executed wills on the 31st of January, 1910, in which the disposition of their property was practically the same as in the wills of March 20th, 1910, with the exception of the residuary clause and the appointment of executors. Sometime after the execution of the prior wills, it was discovered that the party who had prepared them had, without authority, inserted his name as co-residuary legatee and executor. At first codicils were executed to correct this, but, finally, the wills were redrawn. Each will provided for a life estate for the surviving husband or wife. The husband distributed his estate, after the death of the surviving wife, among his and his wife's relatives and certain friends, with the residue to George Shuppner, Sr., naming him also as executor. The will of the wife, after the death of the husband surviving her, distributed a part of her estate by specific legacies and devises principally to the children of George and John Shuppner, close friends for years of both the husband and wife, and died intestate as to the residue of her estate, naming also George Shuppner, Sr.. executor.

The only testimony as to testamentary capacity produced by the caveator, other than non-expert, was that given by Dr. Irving J. Spear, who based his opinion of the mental incapacity of the testatrix upon the facts recited in the testimony of the witnesses for the caveator, whom he had heard testify, he never having seen the testatrix.

The third exception was to the refusal of the Court to permit the following question to be answered: "What instructions did you give your father in regard to the new allotment of shares due to Mr. Stoll by virtue of his ownership of shares of stock in the Old Town Bank that stood in his name?" This question was asked George P. Shuppner, son of George Shuppner, executor of both wills. Young Shuppner had been left, under the will of John Stoll, after the life estate of Mrs. Stoll, some shares of bank stock. It is impossible to tell from the Record whether this question has reference to a point of time after the death of the life tenant or not. But assuming it referred to a time between the deaths of the Stolls, it is difficult to see on what ground it could be admissible. If Shuppner was claiming that the right to subscribe to the new allotment of stock belonged to him, as against the life tenant, that would not make it admissible under the only issue in this case. It could in no wise affect the question of the mental capacity of the testatrix; nor could his thought that he was entitled to it, in any manner, tend to discredit him.

The fourth, fifth, sixth and seventh exceptions all relate to questions asked George Shuppner, the executor and caveatee, under cross-examination, and can all be treated together, since they involve the same principle. Under the will of John Stoll, three ground rents had been left to three women friends of the Stolls by the name of Frederick. Three months before the death of Mr. Stoll, deeds had been executed conveying them to a third party, who in turn executed deeds conveying them to George Shuppner as trustee for Mr. and Mrs. Stoll. The title was in Mr. Stoll, and Mrs. Stoll joined in the deeds for the purpose of releasing her inchoate right of dower. From the testimony admitted, it is clear that this was a transaction of John Stoll about his own property; and to have gone further into the particulars than was gone, could have had no bearing upon the issue. The whole matter was irrelevant.

The eighth exception also relates to the estate of John Sto.l. Karl A. M. Scholtz was the attorney who drew the wills of March 20th, 1910, and was counsel for the executor in settling the estate of John Stoll. The caveator offered in evidence during the cross-examination of Mr. Scholtz, a letter written by him as attorney, to one of the beneficiaries of the will of John Stoll apprising her that the testator had conveyed before his death a lot of ground, which under his will, he had devised to her, but that by a codicil, she was bequeathed five hundred dollars in lieu thereof; and calling attention to the clause in the will about revoking devises as to anyone contesting the will. The caveator contends that since the testimony would show that the codicil was executed before the conveyance was made, the statement, that the legacy was in lieu of the devise which lapsed, was erroneous, and that the letter shows bias upon the part of Mr. Scholtz. The Court refused to admit the letter. This letter had to do entirely with the employment of the attorney in the settlement of an estate other than the one under controversy, and admitting there was error in the statement in the letter, we do not think it presented a proper subject for cross-examination in the trial over the will of Regina Stoll. Every attorney employed to assist in the settlement of an estate is presumably interested in keeping the estate from being the object of at* ! , and the fact that an attorney calls attention of a prospective litigant to the effect of litigation instituted by him, adds nothing, in the way of discrediting that attorney, to the admission that he is the attorney so employed. But this offer of proof, as we have said, was connected with another estate. and from its character, for the letter is in the record, we think the ruling was correct.

The Reporter will please set out the 7th, 9th, 10th and 11th prayers of the caveatee.

The 7th prayer was the 4th prayer of the caveatee in the *Berry Will Case,* 93 Md. 593, and although not commented upon in the opinion in that case, it is significant that upon

the reversal and remanding of that case, it was not criticized. The language is taken almost verbatim from the opinion of this Court in the case of *Crockett* v. *Davis,* 81 Md. 134. While this Court has many times said, that because an instruction was taken from the language used in an opinion in another case, that fact did not necessarily make the instruction correct (*Moore* v. *McDonald,* 68 Md. 321; *Stirling* v. *Stirling,* 64 Md. 138), yet in this case, we are of the opinion this prayer constituted a proper instruction. All through the decisions in this State, from *Davis* v. *Calvert,* 5 G. & J. 269, to *Lyon* v. *Townsend,* 124 Md. 163, it has been held that where a testator disposes of his estate to the exclusion of near and dear relatives, without any known or apparent cause, a suspicious circumstance as to his capacity to make a proper disposition is raised, but it does not *per se* furnish sufficient ground to set aside the will. The rule is founded upon reason, for one who is capable of making a valid deed and contract is capable of making a will, and if one has this qualification no matter how injudicious or imprudent the provisions standing alone may seem to a jury to be, the will should not be set aside. The intrinsic evidence furnished by the will itself is always an element to be considered by the jury in determining the sanity of a testator, and sometimes may furnish very important evidence tending to show the lack of that capacity. And when taken in connection with other facts may conclusively show incapacity. This prayer in our opinion in effect instructs that, conceding that the will itself, showing strangers to the blood of the testator were preferred to certain of her relatives, is a fact to be considered by the jury in determining her sanity, yet that fact standing alone is not sufficient to set aside the will. The appellant complains that the effect of the closing words of the prayer is to nullify all proof the appellant may have offered to show the provisions of the will, tended to prove the testator did not "know or recollect the relative claims of the different persons who should have been the objects of her bounty."

The presumption of law is that a testator is of sound mind at the time of the execution of his will, and the burden of proof is upon the caveator to establish the contrary. *Brown* v. *Ward,* 53 Md. 376. A person defending a will, therefore, is entitled to rely upon the presumption that the reasons of the testator for excluding near relatives and others, who apparently should have been the objects of one's bounty, were valid and sane reasons.

The ninth prayer is the next to which objection is raised. This was the eighth prayer of the caveatee in *Etchinson* v. *Etchinson,* 53 Md. 348, and, although a conceded prayer in that case, was expressly approved in the opinion. The language was probably taken from the language used in the opinion in *Waters* v. *Waters,* 35 Md. 531, for it is verbatim. But independently of the authority of the approval of that case, we are of the opinion the prayer was a proper instruction. It is the duty of the Court before permitting a witness, other than an attesting witness, or an attending physician, testifying as an expert, to express an opinion as to the mental capacity of a testator, to require a statement of the facts and circumstances upon which such an opinion is based. *Townshend* v. *Townshend,* 7 G. 10; *Dorsey* v. *Warfield,* 7 Md. 65; *Waters* v. *Waters,* 35 Md. 531; *Williams* v. *Lee,* 47 Md. 321; *Kerby* v. *Kerby,* 57 Md. 345. In the last cited case, the Court said: "The rule is now well established, that a foundation must be laid for an opinion, and that non-experts cannot be permitted to give it without giving the facts and circumstances on which the opinion is based. *This is to enable the jury or tribunal on whom devolves the duty of decision to judge of the value of the opinion expressed, for if the opportunity of forming a judgment has not been good, the opinion will be of little or no value.*" It cannot be argued that every opinion will have an equal value, and this prayer properly instructed the jury as to the proper test to apply in order to arrive at a correct valuation. A reading of the testimony of the witnesses for the caveator compels us to the

conclusion that none of the opinions expressed were entitled to the denomination of knowledge, as distinguished by decisions of this Court in speaking of the impressions of persons in long, close and intimate relationship with a testator. *Weems* v. *Weems,* 19 Md. 334; *Williams* v. *Lee, supra; Berry Will Case, supra.*

To the tenth prayer there is no contention that it does not state a sound proposition, but it is urged that it is misleading in that it calls particular attention to a fact, amounting to a segregation of evidence. There can be no dispute as to the correctness of the rule prohibiting the use of isolated facts for the purpose of predicating special instructions thereon. The vice of this is especially illustrated in a case where the fact sought to be established is only to be arrived at by considering all of many facts in evidence; one or more may not satisfy a jury as to its existence, while all taken together might do so. Evidence of an intention to dispose of one's property at variance with that actually expressed in the will was admitted in this case for the purpose of throwing light upon the question of whether the testatrix was possessed, at the time of the execution of the will, of sufficient testamentary capacity, and for that alone. That this fact solely would not, in itself, be sufficient to determine the fact of incapacity is not open to argument, but, taken with other facts tending to prove incapacity, might have an important bearing. But we cannot agree that the prayer is subject to the objection, for it instructs the jury that if from a view of the evidence, which of course includes the evidence of the declarations of intention and the variance therefrom, they were of the opinion the testatrix was capable of making a valid will at the time of the execution, that then their verdict was not to be influenced by the fact she had not carried out her expressed intention. If it aimed to depreciate in any way the force that such evidence was entitled to or sought to isolate it from the body of the whole evidence, then there would be strength in the contention, but as we view it, it was merely a safeguard

against any prejudice such evidence might create in the minds of the jury, by pointing out the only effect it could have in the determination of the issue.

The objection to the eleventh prayer is that it instructs the jury to disregard evidence that had been admitted. Of course, evidence when once admitted, is in the case to be considered; if it were not to be considered there would be no ground for admitting it; and the jury have the right to consider every fact that is proven to their satisfaction. *Moore* v. *McDonald,* 68 Md. 335. This evidence was admitted, like the evidence considered in the preceding prayer, for the purpose of shedding light upon the state of mind of the testatrix at the time of executing the will. *Davis* v. *Calvert,* 5 G. & J. 269. This prayer does no more than direct the jury's attention to the fact that what they are to determine, is the condition of the mind of the testatrix at the time of the execution of the will, and if they are satisfied from the evidence, that at that time she was capable of making a valid will, that then the fact that they may believe that she was at some time later incompetent, should have no effect. If it should be thought this prayer is misleading or confusing and the caveator was thereby injured, it is a complete answer that the jury was thoroughly and plainly instructed on this phase of the proof by the first prayer of the caveator.

The rulings of the lower Court will, therefore, be affirmed.

*Rulings affirmed.*