(Decided 13th April, 1882.)

JOHN W. SWARTZ *vs.* MARY E. CHICKERING.

*Senior and junior Mortgage—When junior Mortgage will be Preferred—Section 16 of Article 24 of the Code—Evidence not excluded by the Acts of 1864, ch. 109, 1868, ch. 116, and 1876, ch. 222—Practice in Equity—Matter not a subject for Review on appeal—Written memorandum—Inadmissible evidence.*

A junior mortgage duly recorded prior to a senior mortgage, will, under the provision of sec. 16 of Art. 24 of the Code, have preference to such senior mortgage, the junior mortgage having been made upon a good and valuable consideration, and without knowledge on the part of the mortgagee at the time he accepted his mortgage, of the pre-existing mortgage.

A. executed a mortgage to B. to secure the payment of a certain sum of money. A portion of the mortgage debt having been paid, the

Swartz *vs.* Chickering.

mortgage was released, and a second mortgage was executed to B. to secure the balance. On the same day of the execution of this second mortgage, A. obtained a loan from C. and to secure the same executed a mortgage on the same property. The release by B. and the mortgage to C. were recorded at one o'clock p. m., on the 3rd of November, 1876, and the new mortgage to B. was recorded at fifteen minutes past three o'clock p. m. on the same day. The mortgage to C. was subsequently assigned to D. To defeat the priority secured by the statute (Art. 24, sec. 16, of the Code) to the mortgage to C. it was endeavored to be shown by the testimony of A. that at the time C. accepted the mortgage he had knowledge of the existence of the prior mortgage to B. The testimony of A. was excepted to by D. on the ground that he was a party to the contract of mortgage, and C. the other party being dead, he could not testify in relation thereto under the Evidence Acts of 1864, ch. 109, 1868, ch. 116, and 1876, ch. 222. HELD:

That in the controversy between the mortgagees as to their right of priority, the witness A. was not a party, and was in no manner interested; and being a competent witness at the common law the Evidence Acts aforesaid had no application. Their provisions apply only where the witness would be incompetent by the rules of the common law either because of being a party to the suit, or by reason of interest in the subject-matter.

The re-examination of a witness in a case in equity without a special order of the Court obtained for that purpose, in relation to the same subject-matter upon which he has been examined and cross-examined, is irregular, and the testimony so taken would be excluded upon exception by the other side.

The passage of an order allowing the re-examination of a witness is a matter resting in the discretion of the Circuit Court, and its action in that respect is not a subject for review on appeal.

In a controversy between the assignees of two mortgages executed on the same day, but recorded at different hours, as to their right of priority, a written memorandum purporting to state what had taken place between the junior mortgagee, since deceased, and the witness, the mortgagor, when the latter applied for and obtained a loan from the former, and prepared by the witness more than sixteen months after the mortgage had been executed and a decree passed to enforce the same, is not admissible in evidence for any purpose.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON,. MILLER, ROBINSON, IRVING and RITCHIE, J.

*Samuel Snowden,* for the appellant.

*J. Upshur Dennis,* and *William A. Fisher,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

On the 30th day of June 1875, George Tyler executed a mortgage conveying to Eldridge C. Chickering a lot of ground and improvements on Hanover Street, in the City of Baltimore, for the purpose of securing the payment of the sum of $1800. The mortgage debt having been reduced to $1080, E. C. Chickering, the mortgagee, executed and delivered to Tyler a release of the mortgage of June 30th 1875, and at the same time a new mortgage was executed by Tyler of the same property, to secure to Chickering the sum of $1080. The release and new mortgage were executed about 10 o'clock in the forenoon of November 3rd 1876.

The release, which recited that the mortgage of June 30th 1875, had been fully paid and satisfied, but contained no reference to the new mortgage, was delivered to Tyler, who thereupon, on the same day, obtained from Richard H. Snowden a loan of $1500, and for the purpose of securing its repayment, executed and delivered to. Snowden a mortgage of the same property. The release of Chickering, and the mortgage to Snowden were recorded at 1 *o'clock P. M. on the 3rd day of November* 1876, and the new mortgage to Chickering was recorded at 15. minutes after 3 o'clock P. M. of the same day.

The Snowden mortgage having been assigned to Swartz, the appellant, and proceedings having been instituted, in the name of Snowden for his use, for the purpose of obtaining a decree for the sale of the mortgaged property, a decree for sale was entered on the 27th day of February 1878, and the property was advertised for sale by the trustee. Pending the advertisement, the appellee, to whom the mortgage of E. C. Chickering had been assigned, filed her bill of complaint, alleging, among other things, that at the time the loan was made to Tyler by Snowden, the latter had notice that $1080 of the mortgage debt due Chickering remained unpaid. The bill alleges that "your oratrix hath no reason to believe, and does not believe, that said Snowden intended to record his mortgage, so as to give it apparent priority to that of said Chickering, but believes that said Snowden, when he recorded his mortgage and said release, supposed that the mortgage of said Chickering had already been recorded. For she expressly charges that at the time said Snowden loaned said money to Tyler, and received the mortgage from him to secure the same, said Snowden was fully informed of the fact that the mortgage of $1080, had been executed to said Chickering, and that the mortgage to him, the said Snowden was a second mortgage on said property, and accepted the same, knowing that it was subject to the mortgage held by Chickering." The bill further charges "that neither Eldridge C. Chickering, nor the oratrix had any notice of the mistake that had occurred, and of the fact that the mortgage of Snowden was recorded before that of Chickering, until recently, when they saw a notice that said property was offered for sale under a decree to foreclose the mortgage of Snowden, when upon application to the trustee, by whom the property was so offered for sale, your oratrix learned that it was claimed that the mortgage to said Snowden was in fact prior in lien to that of your oratrix,

and that it was intended to insist on the priority of said lien."

The bill prays for an injunction to restrain the sale, and that the mortgage of the complainant may be declared and established as a first lien on the property.

Snowden, the mortgagee, having died before the bill was filed, his administratrix was made a party defendant, and Swartz, the appellant, and Samuel Snowden, the trustee, were also made parties defendants.

Answers were filed, and by *agreement* the cases were consolidated, the property was sold by the trustee, the sale ratified, and the proceeds of sale brought into Court, which being greatly insufficient to pay both mortgages, the contest as to the right of priority arose upon the distribution of the fund.

Proof was taken before the auditor, the cause set down for hearing, and the Circuit Court determined that the mortgage to Chickering was entitled to priority over the mortgage to Snowden. In accordance with this opinion, the auditor stated an account, to which the appellant filed exceptions which were overruled, and from the order ratifying the account, the present appeal was taken.

*Sec.* 16, *Art.* 24 of the Code, expressly provides that the mortgage which shall be first recorded according to law, shall be preferred, if made *bona fide* and upon good and valuable consideration.

To defeat the priority secured to Snowden's mortgage by the statute, the effort on the part of the appellee was to prove that at the time Snowden accepted the mortgage, he had knowledge of the existence of the mortgage for $1080 which had been given to Chickering a few hours before. For this purpose two witnesses were examined, *Tyler*, the mortgagor, and Chickering, the mortgagee.

The testimony of Chickering with regard to the statements made to him by Tyler at the time of the transaction, was excepted to as inadmissible and was properly

ruled out by the Judge of the Circuit Court. They were clearly *res inter alios.*

No argument is required to show that the rights of the appellant cannot be impaired, or in any manner affected by statements made by Tyler to Chickering out of the presence of himself and of Snowden the mortgagee. The question of fact, as to the alleged notice to Snowden of the existence of Chickering's mortgage, rests entirely upon the testimony of *Tyler.* His testimony was excepted to by the appellant, on the ground that he was an incompetent witness, for the reason that he was a party to the contract of mortgage, and Snowden, the other party to the contract being dead, he is not permitted to testify in relation thereto under the Evidence *Acts of* 1864, *ch.* 109, 1868, *ch.* 116, and 1876, *ch.* 222. This objection to the competency of the witness was overruled by the Judge of the Circuit Court, and we think very properly.

In the controversy between the mortgagees as to their right of priority, the witness was not a party, and was in no manner interested; being a competent witness at the common law, the Evidence Acts referred to have no application. Their provisions apply only where the witness would be incompetent by the rules of the common law either because of being a party to the suit, or by reason of interest in the subject-matter.

The witness was called for the appellee and was twice examined. In his first examination, on the 24th day of June 1878, he failed to support the allegations of the bill with regard to any notice or knowledge, on the part of Snowden, of the existence of Chickering's mortgage, at the time when the mortgage to Snowden was executed and recorded. This will appear from a brief reference to his testimony.

The witness stated (4th Interrogatory,) that when he applied to Mr. Snowden for a loan of $1500, he (Snowden) said "that he could not loan any money on the property

unless the first mortgage was taken up." After an interval of one or two weeks he called again on Snowden and obtained the money, and being asked (13*th Interrogatory*) to state all that then occurred, answered "I showed Mr. Snowden the release, he told me it was all right, and to wait for a few moments, he would send to bank to get the money, which he paid me less commissions and fee."

Having stated that the mortgage to Snowden was executed two or three hours after that to Chickering, he was asked (22nd Interrogatory,) "Did Mr. Snowden know that you had previously executed the Chickering mortgage?" Answer. "I do not know." (24th Interrogatory.) Did Mr. Snowden say anything to you about having the Chickering mortgage reduced to the amount actually due? Answer. "I disremember, but I do not think he did." (28th Interrogatory.) Did you at any time before you received the money from Mr. Snowden, on the day on which the mortgage was executed, refer to the new mortgage which you had that day executed to Mr. Chickering? Answer. "I disremember, but I think not."

In answer to the 30th Interrogatory, by which he was asked to state in his own way everything from the beginning to the end, that transpired between him and Mr. Snowden in regard to the loan and the Chickering mortgage, the witness said, "I applied to Mr. Snowden for a loan of $1500, on the property situated at No. 175 Hanover Street, he told me he would consider it and let me know in a few days; after a few days I called on him and he told me that I could have the money, but he had to examine the title first; I told him there was a mortgage on it of $1800; that was paid within $1080; he told me if I could have it reduced, (or something to that effect,) that I could have the money providing I paid him nine *per cent.* and paid for examining title, papers, &c.; he told me it was all right afterwards, as well as I can remember; that is all the conversation I had with Mr. Snowden in regard to it."

Swartz *vs.* Chickering.

On cross-examination he was asked whether in the conversation with Mr. Snowden to which he had testified in chief,—Mr. Snowden used the word "*reduce*" or "*release*," and he answered "I really don't know the word used."

Upon this testimony it is impossible to charge Snowden with knowledge of the new mortgage to Chickering at the time when his mortgage was executed and recorded.

Six months after this testimony was taken, on the 18th day of January 1879, the same witness was again examined for the appellee in relation to the same subject-matter. Without special order of the Court obtained for that purpose, the re-examination of the witness was irregular, and the testimony so taken would be excluded upon the appellant's exception.

But an agreement was entered into by the solicitors "that the testimony of Tyler on his re-examination shall be received, subject to the decision of the Court, on the question of the right of the complainant to examine said witness on said occasion; it being agreed that if the Court shall decide that the complainant might have had an order granting leave to examine said witness on said occasion, the testimony shall be received as if given under an order of Court, subject to such other exceptions as might be taken thereto, including exceptions to the competency of Tyler as a witness."

A petition was filed by the appellee before the hearing, setting forth the grounds upon which the re-examination of the witness was alleged to be necessary and ought to be allowed, and praying the Court to pass an order allowing the testimony upon the re-examination to be received and read; and the Circuit Court decided that upon an application for that purpose, the Court would have passed the necessary order allowing the re-examination of Tyler. Under the agreement, therefore, the case stands as if such order had been passed before the re-examination of the witness.

The passage of an order of that kind rests in the discretion of the Court below, and its action in that respect is not a subject for review on appeal.

When Tyler was re-examined, two papers were shown to him marked "*Exhibit G. T. No.* 1," and "*Exhibit G. T. No.* 2;" these were written by the witness and given to E. C. Chickering, at the instance of the latter; one of them is dated March 1878, and the other is without date; but as the bill of complaint alleges that neither the appellee nor E. C. Chickering was aware that Snowden's mortgage had been recorded before theirs, until they saw the trustee's advertisement of sale, which was in March 1878, it may be inferred that both papers were written about that time. They purport to state what had taken place between Mr. Snowden and the witness when the latter applied for and obtained the loan of $1500. Exception was taken to the production of these papers, and it is very clear they were wholly inadmissible as evidence. They contain the mere statements made by the witness to Chickering, out of the presence of the appellant, and after Mr. Snowden's death; and the Judge of the Circuit Court was right in holding that "they could not be used in evidence to prove the happening of the events to which they refer." The learned Judge held, however, that they might be used as *memoranda* to refresh the memory of the witness. This rule would apply if they had been written contemporaneously with, or soon after the transaction, but in this case they were written more than sixteen months after the mortgage had been executed, and after proceedings had been instituted, and a decree passed to enforce the mortgage of the appellant, and were written at the instance of Mr. Chickering. Under such circumstances it is clear upon the authorities, they could not be used for any purpose. 2 *Taylor's Evidence, sec.* 1264; 1 *Greenleaf, sec.* 438; *Spring Garden M. Ins. Co. vs. Evans*, 15 *Md.*, 54.

Swartz *vs.* Chickering.

The testimony given by the witness on his second examination, so far as he testified from his own recollection, apart from the written papers, is not more satisfactory or conclusive, than that first given by him, to prove notice to Snowden of the existence of the Chickering mortgage. It is impossible to reconcile the contradictions in the witness' testimony. In answer to the 41*st question*, he made a statement similar to that he had given in answer to the 30th question, to the effect that Snowden's agreement was to loan the money, provided Chickering's mortgage was reduced to $1080, the sum actually due. But he stated in his first examination that Snowden said "he could not loan any money on the property unless the first mortgage was taken up." In the 39th question his attention was called to the indefinite answer previously given by him to *the* 9*th*, and he was asked, "are you able now to give a more definite answer?" and replied "I am not."

The 43rd question and answer were as follows: "Please state whether or not, when Mr. Snowden let you have the money, he knew from what you had told him that $1000 of the Chickering mortgage still remained unpaid?" Answer. "I think so, but I am not positive I told him so, but I am not positive that he understood it so." Our conclusion from the whole testimony is, that the appellee has failed to support the allegations of her bill, and that there is no sufficient ground for denying to the appellant the preference which the statute gives to the mortgage first recorded. To justify the Court in depriving the appellant of his legal priority, would require satisfactory and conclusive proof of notice to Snowden at the time he accepted his mortgage, of the pre-existing mortgage, which is not found in this record. There is no evidence of any mistake on Snowden's part, either with respect to the terms of his mortgage, or in his having promptly placed the same on record together with the release which Chickering had given to Tyler.

The theory of the appellee is that Snowden agreed to loan $1500, and accept a mortgage subject to a prior mortgage for $1080, held by Chickering. If this theory be correct, it would be impossible to avoid imputing to Snowden bad faith in the transaction, which the bill of complaint does not charge, and which the testimony in the case by no means justifies.

It appears that he was a broker, acting as the agent of the appellant, whose money he was lending. Persons engaged in that business are known to observe the greatest care in examining the records, and it would be difficult to imagine that when he had his mortgage and Chickering's release recorded, he supposed there had been a new mortgage to Chickering of the same property recorded on the same day, or that he was ignorant of the fact that his was a first mortgage upon the property.

The fact that he exacted a premium of three *per cent.* above legal interest, as his commissions, furnishes no ground for the inference that he supposed his was a second mortgage. Nor does any such inference arise from the supposed value of the property. There is no evidence of its actual value at that time, or that it was then sufficient security for both mortgages. The only evidence of value furnished by the record is the price obtained at the trustee's sale, which has proved insufficient to pay Snowden's mortgage alone.

Mr. Chickering has no doubt been deceived; his purpose was simply to reduce the amount of his mortgage, without intending to surrender his prior lien. As to the method of accomplishing this purpose he seems to have had bad advice. His business was transacted under the direction of a justice of the peace who prepared the papers. The absolute release executed by him was placed in the hands of the mortgagor, whose interest it was to violate his trust, and who appears to have availed himself of the opportunity, by producing the release, to obtain

the loan from Snowden, without informing him of the new mortgage executed a few hours before, to Chickering.

Under these circumstances, the appellee has no equitable claim to have her mortgage preferred.

The order of the Circuit Court must be reversed, and the cause remanded, so that a new account may be stated, giving to the mortgage of the appellant the preference to which it is entitled.

*Order reversed, and*
*cause remanded.*

(Decided 21st April, 1882.)