CHARLES M. OWENS, and others *vs.* THE STATE OF MARYLAND.

*Evidence—Original entries or Memoranda—Verification of Memory of Witness.*

On the trial of certain judges and clerks of an election precinct, charged with having conspired and combined together to make false and fraudulent returns of votes cast at a municipal election held in the City of Baltimore, and with having caused to be falsely entered on the books of the polls for said precinct at said election, large numbers of names of persons who did not vote at said election, a material question in the case was whether certain persons named in the indictment as the persons whose names had been falsely entered in the poll-books as having voted at the election, did in fact vote. The State called a witness, C. who testified that he was a challenger at the precinct polls, and had a duly certified copy of the registration poll-book for that precinct, in which he checked off the names of all persons who voted; that he was at the polls all day, except at two periods of half an hour each; and that during the time of his absence he left the book in the hands of F. and H., who acted in his place. He further stated that he checked off the names of all but one of those who voted at the polls while he was there, and that he could identify nearly all of the checks made by him in the book. The State also called F., who stated that when C. left the polls each time, he gave said book into the custody of himself (the witness) and H., and that they returned it to C. each time when he came back; that during C's absence, H. held the book, and that he, F., was present with H. all the time, and saw him check off the name of every man who voted. A summons was issued for H., but was returned *non est*. HELD:

1st. That while said book would not have been admissible as independent evidence, it was admissible, with the checks made therein, in connection with the testimony of said witnesses.

2nd. That said book derived its importance and effect as evidence from the fact of its use, and the checks or marks that were made therein, at the polls during the progress of the election.

3rd. That said checks or marks were to be regarded as original entries or memoranda, made cotemporaneously with the transactions to which they related.

4th. That it was no sufficient reason for excluding said book, that C. could not identify each and all the marks or checks placed in it by himself, and distinguish them from those made by H. or F.

During the examination of C., said book was offered in evidence by the State for the purpose of showing that the witness C., and F. and H., had checked off on it the name of every person who had voted at that election; and the State had further offered to follow up the proof by evidence of F. and H. as to what marks had been put in the book during the hour when it was not in C's possession. An objection to the admission of said book having been made at the time when it was offered in evidence, and overruled by the Court,—on a subsequent motion to exclude said book from the consideration of the jury, because all three of the men who held it at the polls (H. not testifying) had not been produced, in conformity with the original proffer by the State, it was HELD:

That the failure to produce H. as a witness was no cause for excluding the book from the consideration of the jury, in view of the testimony of F. who had testified that he was present and saw the name of every man who voted during the absence of C. checked off by H., and that the book in that condition was returned to C.

If a witness swears that he made an entry or memorandum in accordance with the truth of the matter, as he knew it to exist at the time of the occurrence, whether he retains a present recollection of the facts or not, such entry or memorandum is admissible in evidence, as a means of verification or confirmation of what the witness states from memory.

The admissibility of such entry or memorandum does not depend upon the distinction made in the law between primary and secondary proof.

APPEAL from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*John Prentiss Poe*, for the appellants.

Owens, *et al. vs.* State.

*Edgar H. Gans, Deputy State's Attorney of Baltimore City,* and *Charles B. Roberts, Attorney-General,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court:

The appellants were indicted, tried, and convicted, for the offense of having conspired and combined together, to make false and fraudulent returns of votes cast at a municipal election, held in the City of Baltimore on the 27th of Oct., 1886. The three appellants first named in the indictment were judges at said election, and the two last named were clerks. The indictment charges that they "willfully, fraudulently, and unlawfully did conspire, combine, confederate and agree together, to fraudulently count and return large numbers of illegal votes cast at said election, in said seventh precinct of the first ward, and to cause to be falsely entered on the books of the polls for said precinct of said ward at said election, large numbers of names of persons who did not vote at said election," &c.; and that they did, in pursuance of such conspiracy, fraudulently count and return a large number of illegal votes, "and did fraudulently cause to be falsely entered on the books of said election, &c., the names of a large number of persons who did not vote at said election, to wit: [naming particularly twenty-one persons]; all of which persons did not vote at said election as the appellants well knew."

It is apparent, from the averments of the indictment, that one of the leading questions in the case was, whether the persons named in the indictment as the persons whose names had been falsely entered in the poll-books of voters as having voted at the election, did in fact vote, as certified by the appellants in the return of said election.

The most simple and direct means, of course, of ascertaining this fact, would have been by the testimony of the persons themselves whose names were thus entered and

returned, if they were in existence and within the reach of the process of the Court. But their testimony was not the only means of establishing the fact the one way or the other.

In the course of the trial, the appellants took three bills of exception to the admissibility of evidence, adduced by the State, for the purpose of proving that the persons named in the indictment as having been falsely returned as voting, did *not* in fact vote at the election. It appears by the first bill of exception, that the State called a witness named Crawford, who testified that he was a challenger at the precinct polls where the appellants officiated as judges and clerks, and that he had a duly certified copy of the registration poll-book for that precinct, in which he checked off the names of all persons who voted. That he was at the polls the whole day, except for about an hour —half an hour to get his breakfast, and half an hour to get his dinner—and that during the time of his absence he left the book in the hands of Foxwell and Hamilton, who acted in his place. He was then requested by the State to produce the book so used by him at the polls; and the book, purporting to be a duly certified copy of the registration poll-book of the precinct, being produced by the witness, the State offered the same in evidence, for the purpose of showing that the witness, Crawford, and Foxwell and Hamilton, had checked off on it the name of every person who had voted at that election; and offered to follow up the proof by evidence of Foxwell and Hamilton, as to what marks had been put in the book during the hour when it was not in Crawford's possession. To the use of the book in evidence the appellants objected; but the Court overruled the objection, and allowed the book to be used in evidence, under the offer by the State, and the appellants excepted.

By the second bill of exception, it appears that the State proceeded with the examination of the witness Crawford,

and proved by him that he checked off all but one of those who voted at the polls while he was there. He was then asked, if he could identify the checks made by him in the book; to which he replied, that he could identify nearly all of them. The appellants thereupon again objected to the admission of the book in evidence, in view of the fact that the witness could not identify *all* of his checks made in the book, and asked that the book be excluded. This objection was also overruled, and the appellants excepted.

In the third bill of exception it is shown, that the State further proceeded with the examination of Crawford, as to his use of the book, and the care with which he checked off the names of those voting; and at the close of his examination, the State called Charles Foxwell, who testified "that when Crawford left the polls each time, he gave said book into the custody of himself (the witness) and Hamilton, and that they returned it to Crawford each time when he came back : That during Crawford's absence Hamilton held the book, and that he, Foxwell, was present with Hamilton all the time, and saw him check off the name of every man who voted." It is also shown that a summons was issued for Hamilton, but it was returned *non est.*

After the State had closed its evidence, the appellants asked the Court to exclude from the consideration of the jury the challenger's book produced by Crawford, because all three men who held it at the polls had not been produced, Hamilton not testifying, and therefore the original proffer of the State had not been fulfilled. But this request was refused, and the appellants excepted.

We have thus fully stated the facts as set out in the bills of exception, in order to show exactly how the questions arose, and what was the scope and extent of the rulings of the Court upon the objections taken by the appellants. The whole matter seems to be reducible to a

single question, and that is, whether, under the facts as set forth in the several exceptions, there was error in allowing the introduction and use of the challenger's book as evidence, in connection with, and in support of, the testimony of Crawford and Foxwell. As independent evidence, clearly, the book kept and produced by Crawford would not be admissible, but whether it was not properly admitted with the checks made therein, in connection with the testimony of the witnesses mentioned, is a different question.

There is no point made upon the fact that the registration poll-book, used and produced by Crawford, was a copy; nor could there be any such objection taken to it. It was an official copy, duly certified under the law; but it derived its importance and effect as evidence from the fact of its use and the checks or marks that were made therein at the polls, during the progress of the election. As to such checks or marks, therefore, they must be regarded as original entries or memoranda, made cotemporaneously with the transaction to which they relate.

This, as we have seen from the facts stated, is not the case of the use of a book or entry for the mere purpose of refreshing the faded recollection of a witness. But it is the case of a witness who does not profess to be able to repeat from memory all the details of the transaction in question, but testifies that he made correct entries at the time of the transaction as it progressed, and that he knows that such entries were made in accordance with the truth, and that they faithfully represent the whole transaction as it occurred; and the question is, whether in reason, or upon any well settled doctrine of law, such entries ought to be excluded as evidence, *when offered in connection with the testimony of the witness?* We certainly know of no decision in this State that would require the exclusion of such evidence; nor are we aware of any established principle that requires it. On the contrary, we think both decision and principle fully justify its admission.

Owens, *et al. vs.* State.

In the case of *Owings vs. Low*, 5 *G. & J.*, 134, the question being as to the sale and delivery of goods, the clerk of the plaintiff proved that the goods charged for on the day-book, produced at the trial, were at times made by witness, or one of the other persons named by him; and " that all the things charged by himself he knew were delivered as charged, *because he never made such charges without delivery."* And it was held, without question, that it was competent for the clerk to prove the delivery of the goods, by referring to the entries made by him in the day-book, upon his testifying to his belief that the entries were truthfully made at the time they professed to have been made. The same principle has been fully adopted by the Supreme Court of the United States. In the case of *Ins. Co. vs. Weide*, 6 *Wall.*, 677, the witness, one of the plaintiffs, identified the day-books and ledger produced, and testified that such books were kept by him and his partner, (who was also examined as a witness and testified to the same facts,) and that *they were correct:* that the entries in the day-book were the original entries of purchases and sales; but that he could not state from recollection the amount or value of the stock on hand at the time of the fire. And upon the question of the admissibility of these books in evidence, the Court said: " There can be no doubt but the day-books and ledger, the entries in which were testified to be correct by the persons who made them, were properly admitted. They would not have been evidence *per se,* but with the testimony of the witnesses accompanying them all objections were removed." And the same principle was strongly re-affirmed by the same Court, in the subsequent case of *Ins. Co. vs. Weide*, 14 *Wall.*, 375. In this latter case the Court said: " How far papers, not evidence *per se,* but proved to have been true statements of facts, at the time they were made, are admissible in connection with the testimony of a witness who made them, has been a frequent subject of inquiry, and it

has many times been decided that they are to be received. And why should they not be? Quantities and values are retained in the memory with great difficulty. If at the time when an entry of aggregate quantities or values was made, the witness knew it was correct, it is hard to see why it is not at least as reliable as is the memory of the witness." And the same principle has been maintained and applied by other Courts of high authority, without qualification. *Farm. & Mech. Bank vs. Boraef,* 1 *Rawle,* 152; *Smith vs. Lane,* 12 *Sergt. & Rawle,* 84, 87; *State vs. Rawles,* 2 *Nott & McC.,* 331, 333.

Nor is there any real departure made in these decisions from former settled doctrine upon the subject. This is fully shown, by a careful and able review of all the cases, by *Messrs. Cowen and Hill, in Note* 377 *to page* 412 *of* 2 *Phillips Evidence* (2 *Vol. notes,* 726.) And in the case of *Halsey vs. Sinsebaugh,* 15 *N. Y.,* 485, the same thing is shown, and the principle deduced from the cases by Messrs. Cowen and Hill, in their note to Phillips, is, in that case, fully approved. In the case of *Halsey vs. Sinsebaugh* the question was as to what a witness had sworn on a former trial, and one of the counsel engaged was called as a witness, who testified that he was present at the former trial, and took notes of the testimony, and that he had no doubt of the correctness of his notes, which he produced. But objection was made to his stating what the witness had said, unless he recollected the testimony independently of the notes taken by him; and upon his saying that he did not, the objection was sustained by the Court below. But upon appeal that ruling was reversed; the Court of Appeals holding, that where a note or memorandum made at or about the time when the event or transaction mentioned in it took place, and where the author swears *that he knows it to have been correct when made,* such note or memorandum may be read to the jury as evidence, in connection with the oral testimony of the witness. And the Court say, what is

certainly true, that to exclude such note or memorandum, when shown to have been honestly made, would be to reject the best and frequently the only means of arriving at truth. That case, and also the note of Cowen and Hill to 2 *Phillips' Evidence, supra,* have both been referred to with approval by this Court, in the case of *Martin vs. Good,* 14 *Md.,* 409. And in a still more recent case, that of *Morrow vs. Ostrander,* 13 *Hun,* 219, where the genuineness of a teacher's certificate was in question, the School Commissioner was called as a witness, and testified that, to the best of his knowledge and belief, he did not sign or issue the certificate; and further, that he kept a book, in which he entered the certificates issued by him during the month in which the certificate in question bore date; and which book was produced and offered in evidence to show that it contained no entry of the certificate held by the plaintiff. And upon objection being made, the book was excluded by the Court below, but on appeal, that ruling was reversed ; and the Court of review said : "The Court below seems to have excluded the memoranda on the ground that they were not required to be kept by law. Whether or not the memoranda were admissible, the reason assigned for excluding them was not sound. There is no distinction, in this respect, between entries which are required to be made officially, or in the course of business, and those which are made voluntarily outside of the routine of the business of the party making them." And they cite the cases of *Monroe vs. Culver,* 2 *Hill,* 531, and *Merrill vs. The Ithaca* and *Oswego R. R. Co.,* 16 *Wend.,* 599. And the Court, referring to the case of *Halsey vs. Sinsebaugh, supra,* held that the book was admissible as evidence, in connection with the testimony of the witness making the entries therein.

It has been urged in argument that the entry or memorandum can only be used where the witness has *no*

present independent recollection of the transaction referred to. But its admissibility depends upon no such distinction. If the witness swears that he made the entry or memorandum in accordance with the truth of the matter, as he knew it to exist at the time of the occurrence, whether he retains a present recollection of the facts or not, the entry or memorandum is admissible; for though he may have a present recollection, (of doubtful or varying degree of certainty, it may be,) independently of the memorandum, the paper is admissible as means of verification or confirmation of what he states from memory. This is the clear logical deduction from the cases cited. Few men are so gifted with the powers of memory as to be able to recall the details of past transactions with perfect accuracy, especially when such transactions involve great number of names, dates, amounts, &c., and therefore the best recollections, and the greatest degree of self-reliance in the statement of past facts, may derive force and reliability from truthful memoranda made at the time of the transaction; and the law always prefers that evidence which insures the greatest degree of certainty in the establishment of truth. The admissibility, however, of such entry or memorandum, does not depend upon the distinction made in the law, between primary and secondary proof.

Here, the book was offered in evidence in connection with the testimony of Crawford, with a proffer of other evidence to cover the whole time from the opening to the close of the election polls. Crawford testified *to the fact* that he had checked off *all but one of those who had voted at the polls, while he was there;* and Foxwell testified, that, upon both occasions when Crawford left the polls, he, Crawford, placed the book in the hands and custody of witness and Hamilton, and that they gave it back to Crawford upon his return; and that during Crawford's absence Hamilton held the book, and he, Foxwell, *was present with Hamilton all the time, and saw him check off*

*the name of every man who voted.* With this testimony, we can entertain no doubt of the admissibility of the book in evidence, upon the principle of the cases to which we have referred.

Nor was it any sufficient reason for excluding the book that Crawford could not identify each and all the marks or checks placed in the book by himself, and distinguish them from those made by Hamilton or Foxwell. Whether the marks were made by one or the other of these witnesses was quite immaterial; for the checks or marks placed in the book were simply to designate those who had voted; and it was not so much the purpose of the evidence to show what persons had voted, as to show in a negative way that those particular persons named in the indictment did not vote, as certified by the appellants.

Nor was the failure to produce Hamilton as a witness to testify cause for excluding the book, in view of the testimony of Foxwell; for the latter testified that he was present and saw the name of every man who voted, during the absence of Crawford, checked off by Hamilton, and that the book in that condition was returned to Crawford. The absence of Hamilton, doubtless, afforded matter of comment to the jury, and was a circumstance for their consideration in estimating the value of the evidence; but in view of the testimony of the witnesses in relation to the book, and the manner of its use at the polls, the Court was clearly right in refusing to exclude it from the consideration of the jury. If the indictment had been for wilfully and corruptly omitting the names mentioned from, instead of including them in, the returns, and on the trial the traversers had offered the evidence here offered by the State, every fair-minded person would say at once that the evidence ought to be admitted; and clearly, if it would be proper to admit the evidence in that case, it ought not to be excluded in this. Its weight and force the jury were very competent to consider, the only question for the Court being its legal admissibility.

The case has been very ably and ingeniously argued for the appellants, and we have carefully considered all the points taken; but we discover no error in the rulings of the Court below, and those rulings, as presented by the bills of exception, must be affirmed.

> *Rulings affirmed, and*
> *cause remanded.*

(Decided 21st June, 1887.)

BRYAN, J., filed the following dissenting opinion:

The bills of exception make a very meagre statement of the facts of this case. We have not, however, any legitimate means of knowing what occurred at the trial in the Criminal Court, beyond what is stated in the record. We are strictly confined to that, and are obliged to found our opinion exclusively upon what is therein stated. John Crawford, a witness for the State, testified that he was at the seventh precinct of the first ward of the City of Baltimore at the last municipal election; that he was there during the whole time the polls were open with the exception of an hour; that during that hour of absence he left a book with Foxwell and Hamilton. The testimony in reference to this book is thus stated in the first bill of exception: "Q. What book did you have there—you say you had a book there? A. Yes sir. Q. Get it and let us see what it is?" The witness here produced a book purporting to be a duly certified copy of registration poll-book of the seventh precinct of the first ward; to the use of which in evidence the traverser objected. The State offered the book for the purpose of showing that the witnesses Crawford, Foxwell and Hamilton, had checked off on it the name of every person who had voted at that election, and offered to follow up the proof by evidence of Foxwell and Hamilton as to what marks had been put in the book during the hour when it was not in Crawford's

possession. The Court overruled the objection of the traversers, and permitted said book to be used in evidence.

The traversers were indicted for a conspiracy, fraudulently to count and to return large numbers of illegal votes cast at the municipal election, and to cause to be falsely entered on the poll-books large numbers of persons who did not vote at the election. And the overt act of the conspiracy was charged to be the false entry on the poll-books of the names of twenty-one persons who did not vote. The names are stated in the indictment. As a matter of course, unless the State could succeed in showing in point of fact that some one of these twenty-one persons did not vote, the indictment could not be sustained. The book was offered for the purpose of showing that they did not vote, and that the entry of their names on the poll-books was fraudulent and false.

If the names of all persons who voted were checked off on the book which was offered in evidence, it followed as a necessary inference that those persons whose names were not checked failed to vote. These checks were made without the knowledge or acquiescence of the accused, by persons who kept the book in their own possession. They were in fact private unsworn declarations that certain persons voted, and that certain others did not vote. The law has prescribed with great accuracy and precision the circumstances under which unsworn memoranda may be admitted in evidence. In the second reign of Queen Anne, the case of *Price vs. Earl of Torrington* established the rule of evidence, which has always been recognized and maintained by the Courts of this State. It made an exception to the general rule which excludes hearsay testimony. In *Romer vs. Jaccksch,* 39 *Md.,* 589, this Court speaking of the doctrine in question, quotes with approval the following passage from *Taylor on Evidence :* " From the cases cited above, it may be collected, that in order to

bring a declaration within the present exception, proof must be given that it was made contemporaneously with the fact which it narrates, and in the usual routine of business, by a person whose duty it was to make the whole of it, who was himself personally acquainted with the fact, who had no interest in stating an untruth, and who is since dead." There is another rule of evidence which permits a witness for the purpose of refreshing his memory, to use writings which have been made by himself. The distinction is very manifest between the cases coming under these different rules. In the one case the writings go to the jury as evidence of the matters stated in them, and the oath of the witness is necessary merely to prove that they are original, and that they were made in the usual course of business; in the other case the oath of the witness must establish the truth of the matter in question, according to his present knowledge and belief, and the writings are not instruments of evidence to any extent whatsoever. The distinction between these two classes of cases is clearly marked in the text books and in decided cases. In the notes to *Price vs. Earl of Torrington,* 1 *Smith's Leading Cases,* it is said : " The cases involving this principle are to be distinguished from those which turn upon a witness' being allowed to refresh his memory by referring to memoranda or entries." It is held that the documents used to refresh the recollection of a witness must be produced at the trial, so that the *opposite counsel* should have an *opportunity of inspecting them,* so that he may have the benefit of refreshing the memory of the witness by every part of them; but these documents are not evidence, and do not become so by reason of the fact that the adverse counsel has looked at them, and cross-examined the witness in respect to them. 1 *Taylor on Evidence, section* 1270; 1 *Greenleaf on Evidence, section* 437. In *Kensington vs. Inglis,* 8 *East,* 273, it appeared that licenses to trade with the public enemy

Owens, *et al. vs.* State.

had been granted by a colonial governor, and entries of the licenses had been made by the governor's secretary in a memorandum book; and the question was whether it was necessary to produce the book in evidence for the purpose of proving the granting of a license. Lord ELLEN-BOROUGH said: "As to the non-production of the secretary's memorandum book, in which he had made entries of licenses for his own and the governor's information; that book, if it had existed, and been in the secretary's hands ready to be produced, could not have been produced at the trial in proof of the fact of granting any particular license; the only use which it could have been allowed to answer being by way of memorandum to refresh the memory of the secretary who made the entries, when he should be called as a witness." In *Field vs. Thompson,* 119 *Massachusetts,* 151, the question being on the admission of certain entries in the plaintiff's account book, the Court said: "The entries might doubtless be shown to the witness to aid his recollection; and if they did not appear to have been admitted for any other purpose the exception to their admission could not be sustained." *Dugan vs. Mahoney,* 11 *Allen,* 572; *Cobb vs. Boston,* 109 *Mass.,* 438. But the final ruling of the learned Judge, as stated in the bill of exceptions allowed by him, went beyond this. It was, "that the entry in the book might be regarded as a memorandum made by the plaintiff at the time, and, as such, entitled to some weight in confirmation of the recollection and evidence of the plaintiff," upon the question at issue between the parties. This ruling was inconsistent with the first one, and allowed to these entries a weight as evidence in corroboration of the plaintiff's testimony, to which they were not legally entitled. *Townsend Bank vs. Whitney,* 3 *Allen,* 454; *Maine vs. Harper,* 4 *Allen,* 115; *Bentley vs. Ward,* 116 *Mass.,* 333; *Prew vs. Donahue,* 118 *Mass.,* 438." In *Cobb vs. Boston,* 109 *Massachusetts,* the Court said: "We do not understand that the

memorandum was offered as being of itself evidence, but that the witness testified to his present recollection of the truth and correctness of a valuation, which he made six months previous to the taking (of land for the use of the City of Boston). The fact that he made a record at the time ought not to prevent him from testifying to the matters which he had so recorded, if at the time of testifying, he knew them to be true. Under such circumstances, the commissioners might in their discretion permit him to read from his memorandum." In *Commonwealth vs. Ford,* 130 *Massachusetts,* 64, the Court, quoting from Lord ELLENBOROUGH, said: " It is not the memorandum that is evidence, but the recollection of the witness."

These rules of the common law prevail in Maryland. Let us examine some of the decisions of this Court. In *Owings vs. Piet and Low,* 5 *Gill & Johnson,* 134, cited in the opinion of the majority of the Court, a witness testified that he and one Dukehart were clerks in the employment of the plaintiffs who carried on the hardware business in the City of Baltimore ; that during that time various articles of hardware were sold and delivered to the defendant ; that sometimes the things were delivered by witness to defendant, or his order ; sometimes by plaintiffs or one of them ; and sometimes by Dukehart; that the charges for the same on the day-book of plaintiffs were at times made by witness, or by one or other of said persons ; that all the things charged by himself, he knew were delivered as charged, because he never made such charges without delivery ; and that it was the constant usage of the plaintiffs and Dukehart, never to make entries in the book without a like delivery. The defendant objected to the admissibility of all the evidence, except the evidence of the entries actually made by the witness, and the goods, amounts and particulars comprised in such entries ; and Baltimore County Court sustained the objection. The Court of Appeals affirmed this ruling. The witness

swore *that he knew* that the things charged by himself were delivered as charged. His evidence, as to the matters which he knew was not objected to, and no question about this part of it was decided by the County Court or by the Court of Appeals. The point decided by both Courts was that the evidence was not competent to show the entries made by the plaintiffs and by Dukehart. In *Reynolds vs. Manning*, 15 *Md.*, 510, this Court explicitly quotes and approves the rule stated in *Price vs. Torrington* in these words: "It has been long held that entries made by a clerk in the regular course of business, he having no interest at the time in stating an untruth, should be received in evidence after the clerk's death on proof of his hand-writing;" and the only change which the Court makes in the rule is, that it extends the admissibility of this testimony to a case where the witness had gone to Australia, and had not been heard of for three years. As we have already seen, this Court in *Romer vs. Jaecksch* 39 *Md.*, 585, had occasion to refer to and approve of the rule in *Price vs. Torrington.* This last case was decided by Chief Justice BARTOL and Judges BOWIE, GRASON, MILLER, ALVEY, and ROBINSON. In *Spiker vs. Nydegger*, 30 *Md.*, 315, the plaintiff sought to prove by a witness who had been a justice of the peace, certain entries which he had made on his docket; the Court below excluded the entries, but permitted the witness to use them for the purpose of refreshing his recollection, and then permitted the parol testimony of the witness to go in evidence to the jury. This Court affirmed this ruling. In *Swartz vs. Chickering*, 58 *Md.*, 290, certain papers written by the witness were offered in evidence. This Court, on page 298, says: "Exception was taken to the production of these papers, and it is very clear they were wholly inadmissible as evidence. They contain the mere statements made by the witness to Chickering out of the presence of the appellant and after Mr. Snowden's death; and the Judge

of the Circuit Court was right in holding that *they could not be used in evidence to prove the happening of the events to which they refer.* The learned Judge held, however, that they might be used to refresh the memory of the witness. This rule would apply if they had been written contemporaneously with, or soon after the transaction." In *Ward vs. Leitch*, 30 *Md.*, 326, where entries in the plaintiff's ledger made in the hand-writing of the defendant's testator, were offered in evidence against the defendant, this Court said : "Now although these entries would not have been admissible for the purpose of charging a third person, because not made by a clerk in the ordinary discharge of his duty ; and contemporaneous with the transactions to which they relate, yet they were admissible as declarations or admissions made by the party against his interest." page 333. In *Bullock vs. Hunter,* 44 *Md.*, 416, where *Ward vs. Leitch* and other cases were cited, it was said : "The case is clearly distinguishable from those cited, by the fact that the witness had a distinct recollection of the several transactions *independently of the paper, and was able to testify from his own recollection,* after looking at the account which was used merely for the purpose of refreshing his memory." In this last case the Court refer to *Henry vs. Lee*, 2 *Chitty's Reports*, 124, already cited, in which Lord Ellenborough said : "It is not the memorandum that is the evidence, but the recollection of the witness." In *Waters vs. Waters*, 35 *Md.*, 540, the question was whether the testimony of a deceased witness, given in a former cause between the same parties, could be proved by reading to the jury the notes of such testimony as taken down by one of the attorneys at the former trial. The Court below refused to permit the notes to be read as evidence, but "allowed the attorney, who was sworn as a witness, to refresh his memory by looking at the notes, and then to state what recollection he had of the testimony given by the deceased witness after he had read the notes."

This Court affirmed the judgment and decided that such notes are mere memoranda, which may be used to refresh the memory of the witness who took them, but are not of themselves evidence. The Court say that they fully concur in the reasoning of C. J. TILGHMAN in *Lightner vs. Wike,* 4 *Sergeant & Rawle,* 203. In that case he said: "These notes have no character recognized by the law; they are no more than a private memorandum, by which the witness would have been permitted to refresh his memory; but when refreshed, he must swear from his own memory and not from his notes." In *Martin vs. Good,* 14 *Md.,* 399, cited in the opinion of the majority, the Court did not permit an entry to go to the jury in evidence. On the contrary the question was about the admission of the parol testimony of a witness, and they quote from *Greenleaf,* and state the rule in these terms: "From an examination of the adjudged cases, we are of opinion that the law applicable to the point under review is correctly stated in 1 *Greenlf. Ev.,* 437, as follows: 'Where the writing is neither recognized by the witness as one which he remembers to have seen before, nor awakens his memory to the recollection of anything contained in it, but, nevertheless, knowing the writing to be genuine, his mind is so convinced that he is, on that ground, enabled to swear positively to the fact,' the testimony will be received." These references have been made at great length, but they were necessary to show the frequent and oft-repeated declarations of this Court on the rule of evidence now under consideration. A reference to *Hare & Wallace's Notes* to *Price & Torrington* in *Smith's Leading Cases,* will readily show that the law is different in some of the other States. The cases cited from the *New York Reports* in the opinion of the majority of the Court, show that a different rule of evidence prevails in that State. And the cases cited from the Supreme Court of the United States, show that that tribunal has adopted

the New York rule. In *Insurance Company vs. Weide,* 9 *Wallace,* 677, the Court founds its opinion on two New York cases. It is not necessary to consider how far it is our duty to adhere to our own law, established by immemorial usage and solemn adjudication, when we find that it varies from the opinions held elsewhere. Nor is it at all necessary for us to discuss the reasons which have controlled the judgment of other judicatures. An examination of the cases cited, will, however, show that they rest upon premises which have been denied and rejected by our Courts. In *Halsey vs. Sinsebaugh,* 15 *New York,* 485, the decision is thus stated : "Minutes of the testimony of a living witness taken by counsel upon a former trial, who produces them and swears that he has no doubt of their correctness, but has no recollection, independent of the minutes, may be read by him, and are *evidence to the jury.*" A ruling in direct conflict with our law as declared in *Waters vs. Waters,* 35 *Md.,* 531. In *Morrow vs. Ostrander,* 13 *Hun,* 219, the decision in *Halsey vs. Sinsebaugh* was followed, and it was further stated that there was "no distinction between entries which are required to be made officially or in the course of business, and those which are made voluntarily outside of the routine of the business of the party making them." This last declaration is at war with the whole theory of the rule of evidence, as always held in this State, and as emphatically stated in *Romer vs. Jaecksch,* 39 *Md.,* 589. As has been stated, the Supreme Court of the United States has adopted the New York rule. In the cases cited from that Court in the opinion of the majority of this Court, it was held that entries made by the plaintiffs themselves were admissible in evidence. When the Supreme Court decides a question arising under the Constitution and laws of the United States, its decision must be accepted and obeyed by the State Courts. But it has never been held or even surmised by any legal authority, that its opin-

ions can change the local law of the different States. Assuredly no such idea has ever been entertained by any member of this Court.

Let us recur to the testimony as stated in the first bill of exception. The marks in the book were mere private memoranda made by the witnesses. They were as distinctly *hearsay,* as if they had been mere oral statements. I think that I have shown by reference to decided cases, that no such testimony is tolerated in our Courts. The book might have been used to refresh the memories of the witnesses. In that case they ought to have been required to state what recollection they had on the subject as ruled in *Waters vs. Waters,* 35 *Md.,* 531. Or if they had forgotten the particulars, yet knowing the writing to be genuine, their minds were so convinced, that they were able to swear positively to the facts, their testimony ought to have been received ; this would have been according to the decision in *Martin vs. Good,* 14 *Md.,* 398. The facts to be proved were that the twenty-one persons named in the indictment were falsely entered as having voted, and that they did not in fact vote ; or, at least that some one of them was falsely entered as a voter, and failed to vote. The record does not state that the book showed anything whatever about any one of these persons ; nor does it state that any of the witnesses mentioned any one of them, or in any way alluded to one of them. It is stated in the first bill of exception that the book was admitted in evidence, on the pledge of the State to follow it up by evidence of Foxwell and Hamilton as to what marks had been put in the book during the hour when it was not in Crawford's possession. In the second and third exceptions, evidence was offered tending to show that the names of all persons who voted had been checked off on the book. This proof does not remove the objection to the admissibility of the book. In the view of the law the book was *hearsay ;* a private memorandum made by the witnesses. As such it is peremptorily excluded by the

law of Maryland. And it cannot be made more than *hearsay* by statements of witnesses that it was correctly kept. Hearsay may be true or untrue ; but it is hearsay still. The witnesses who kept the book may examine it at the trial and refresh their memories, and if they are able to swear that the matters stated are true, it is competent for them to do so. The persons accused are entitled to the oath of the witnesses as to their present knowledge, tested by the ordeal of a cross-examination, which is something more precise and certain than any statements that they made correct entries in a book on a previous occasion. And so the law considered when it rejected such entries, unless they were made by a person whose duty it was to make them in the usual course of business, who was himself personally acquainted with the facts stated, and who was dead or so far distant, that it was impossible to obtain his testimony. It has already been seen that according to the record before this Court, neither the book nor the testimony of any witness shows that any person was falsely entered on the poll-books as a voter.

The crime alleged against these traversers is one of much enormity. But surely no one will imagine that they are not entitled to be tried according to the law of the land. Upon the Courts is devolved the solemn duty of administering this law, "without fear, favor or affection," dealing out justice strictly and impartially to all without respect to persons. It is my deliberate conviction that the evidence in this record was admitted contrary to the law as heretofore understood and established ; and that the traversers are entitled to a new trial.

(Filed 21st June, 1887.)